IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| DANIEL JESUS MARTIN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 1:16-cv-58-ECM |
| | ) | [WO] |
| OFFICER MIKE (CPL) DOTSON, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

\*   \*   \*   \*   \*   \*   \*

| | | |
|---|---|---|
| DANIEL JESUS MARTIN, #278 226, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 1:16-cv-245-ECM |
| | ) | [WO] |
| LT. MICHAEL BRYAN, | ) | |
| | ) | |
| Defendant. | ) | |

## RECOMMENDATION OF THE MAGISTRATE JUDGE

### I. INTRODUCTION

Plaintiff Daniel Jesus Martin filed this action under 42 U.S.C. § 1983, alleging Defendants Michael Bryan, Mike Dotson, and the Ozark Police Department ("the Department") (collectively, the "Defendants") violated Plaintiff's constitutional rights when Plaintiff was subjected to a search in a motel room and subsequent arrest for unlawful possession of controlled substances in November 2015.  Plaintiff seeks injunctive relief and damages. Docs. 5, 10, 11, 26, 31 & 32.

Defendants filed answers, special reports, supplemental special reports, and

evidentiary materials addressing Plaintiff's claims for relief. *See* Docs. 37, 39, 42, 43, 44, 57, 62, 63, 77, 79, 80, 83, 85 & 86.  In their supplemental special report, Defendants argue, among other defenses, that they are entitled to summary judgment on Plaintiff's claims of unlawful search, false arrest, and malicious prosecution claims under the doctrine set forth in *Heck v. Humphrey,* 512 U.S. 477 (1994). Doc. 86 at 3–8.  Upon receipt of Defendant's reports, the court directed Plaintiff to file a response, including sworn affidavits and other evidentiary materials, and specifically cautioned Plaintiff that "at some time in the future the court will treat Defendants' report and Plaintiff's response as a dispositive motion and response." Docs. 45 & 87.  Plaintiff responded to Defendants' June 9, 2016 report and materials (Docs. 50, 51 & 73), but filed no response to Defendants' January 5, 2017 supplemental report and materials.  Pursuant to the court's June 10, 2016 order (Doc. 45), the court now treats Defendants' supplemental special report as a motion for summary judgment and finds summary judgment is due to be granted in favor of Defendants.[1]

## II. STANDARD OF REVIEW

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  "Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no [dispute] as to any material fact and that the moving party is entitled

---

[1] This consolidated action includes the case styled as *Martin v. Olson et al.*, 1:16-cv-334-WKW. Doc. 52. The defendants named in case 1:16-cv-334-WKW—Wally Olson, Adam Bruhn, and Clinton Briggs—have been dismissed. Doc. 78.

to judgment as a matter of law.'" *Greenberg v. BellSouth Telecomm., Inc.*, 498 F.3d 1258, 1263 (11th Cir. 2007) (per curiam). The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the [record, including pleadings, discovery materials and affidavits], which it believes demonstrate the absence of a genuine [dispute] of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The movant may meet this burden by presenting evidence indicating there is no dispute of material fact or by showing the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Id.* at 322–24.

Defendants have met their evidentiary burden and demonstrated the absence of any genuine dispute of material fact. Thus, the burden shifts to Plaintiff to establish with appropriate evidence beyond the pleadings that a genuine dispute material to the case exists. *Celotex*, 477 U.S. at 324; Fed. R. Civ. P. 56(e)(3) ("If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact [by citing to materials in the record including affidavits, relevant documents or other materials], the court may . . . grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it . . . ."); *see also Caldwell v. Warden, FCI Talladega*, 748 F.3d 1090, 1098 (11th Cir. 2014) (holding that court may considers facts pled in a plaintiff's sworn complaint when considering summary judgment).

A genuine dispute of material fact exists when the nonmoving party produces evidence that would allow a reasonable factfinder to return a verdict in its favor.

*Greenberg*, 498 F.3d at 1263.   The evidence must be admissible at trial, and if the nonmoving party's evidence "is merely colorable . . . or is not significantly probative . . . summary judgment may be granted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50 (1986); Fed. R. Civ. P. 56(e).   But a "mere 'scintilla' of evidence supporting the opposing party's position will not suffice." *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990) (citing *Anderson*, 477 U.S. at 252).   Only disputes involving material facts are relevant, and what is material is determined by the substantive law applicable to the case. *Anderson*, 477 U.S. at 248.   To demonstrate a genuine dispute of material fact, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine [dispute] for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

"The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255; *Feliciano v. City of Miami Beach*, 707 F.3d 1244, 1253 (11th Cir. 2013) ("To be sure, [plaintiff's] sworn statements are self-serving, but that alone does not permit us to disregard them at the summary judgment stage [because] [c]ourts routinely and properly deny summary judgment on the basis of a party's sworn testimony even though it is self-serving.") (citation and internal quotation marks omitted).   "'Inferences based upon speculation are not reasonable,' and may not defeat a motion for summary judgment.   Conclusory, uncorroborated allegations by a plaintiff in an affidavit or deposition will not create an issue of fact for trial sufficient to defeat a well supported summary judgment motion." *Solliday v. Fed. Officers*, 413 F. App'x 206, 207

(11th Cir. 2011) (quoting *Marshall v. City of Cape Coral, Fla.*, 797 F.2d 1555, 1559 (11th Cir. 1986), and citing *Earley v. Champion Int'l Corp.*, 907 F.2d 1077, 1081 (11th Cir. 1990)); *see also Holifield v. Reno*, 115 F.3d 1555, 1564 n.6 (11th Cir. 1997) (holding that conclusory allegations based on subjective beliefs likewise are insufficient to create a genuine dispute of material fact). Although factual inferences must be viewed in a light most favorable to the nonmoving party and *pro se* complaints are entitled to liberal interpretation by the court, a *pro se* litigant does not escape the burden of sufficiently establishing a genuine dispute of material fact. *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990). Thus, a plaintiff's *pro se* status alone does not mandate this court's disregard of elementary principles of production and proof in a civil case. Here, Plaintiff fails to demonstrate a requisite genuine dispute of material so as to preclude summary judgment on his claims against Defendants. *See Matsushita*, 475 U.S. at 587.

## III. DISCUSSION

### A.   Injunctive Relief

Plaintiff seeks to be released from imprisonment or to have his probation terminated. Docs. 5, 11 & 26; Case No. 1:16-cv-245, Doc. 1. This court cannot grant release from prison in an action under 42 U.S.C. § 1983. *See Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973) ("[W]hen a state prisoner is challenging the very fact or duration of his physical imprisonment, and the relief he seeks is a determination that he is entitled to immediate release or a speedier release from that imprisonment, his sole federal remedy is a writ of habeas corpus."). Plaintiff's request for release therefore is due to be denied.

**B.     The Ozark Police Department**

Plaintiff names the Ozark Police Department as a defendant.  But a county sheriff's department "is not a legal entity and, therefore, is not subject to suit or liability under section 1983." *Dean v. Barber*, 951 F.2d 1210, 1214 (11th Cir. 1992).  Additionally, "the departments and subordinate entities of municipalities, counties, and towns that are not separate legal entities or bodies do not have the capacity to sue or be sued in the absence of specific statutory authority." *Ex parte Dixon*, 55 So.3d 1171, 1172 n.1 (Ala. 2010).  Finally, to the extent Plaintiff attempts to sue the Department under the doctrine of *respondeat superior* (*see* Doc. 10 at 3), this is not a valid avenue for relief. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978); *Busby v. City of Orlando*, 931 F.2d 764, 776 (11th Cir. 1991) ("Because suits against a municipal officer sued in his official capacity and direct suits against municipalities are functionally equivalent, there no longer exists a need to bring official-capacity actions against local government officials, because local government units can be sued directly[.]").  Consequently, the Ozark Police Department is due to be dismissed as a defendant.

**C.     Dotson and Bryan**

Plaintiff identifies three main claims with overlapping allegations in Case No. 1:16-cv-58-ECM. Docs. 5, 10 & 11.  The various claims grow out of Plaintiff's assertion that his motel room was illegally searched and that he was unlawfully arrested for possession of a controlled substance for which he was then maliciously prosecuted.  First, Plaintiff claims that he suffered a violation of his due process rights, his equal protection rights, and his right to be free from illegal search, seizure, and arrest. Doc. 5 at 2 (citing the Fourth,

Fifth, Sixth, and Fourteenth Amendments).  Plaintiff asserts that Dotson searched his motel room without probable case and arrested him, then turned the evidence and case over to Bryan. Doc. 5 at 3.  Plaintiff contends that Bryan's "abuse [is] in progress."[2] Doc. 5 at 3; Doc. 10 at 3.  Plaintiff alleges that Dotson conducted a premature investigation with no probable cause and then arrested Plaintiff for possession of a controlled substance. Doc. 5 at 2–3; Doc. 10 at 1 & 3.  Second, Plaintiff claims Dotson was biased and prejudiced against Plaintiff resulting in a "fundamental miscarriage of justice" and a violation of the Equal Protection Clause. Doc. 5 at 3; Doc. 10 at 2.  Plaintiff also asserts a violation of the Sixteenth Amendment.[3] Doc. 10 at 3.  Plaintiff claims that there were multiple people in the motel room when Dotson entered and that none of them took ownership of the drugs found in the room, but Dotson arrested only Plaintiff, who was the only black man in the room. Doc. 10 at 1–3.  Third, Plaintiff asserts that even after he reached the jail he was not informed of charges against him. Doc. 5 at 3.  At the jail, however, Plaintiff alleges that Dotson told him he was being booked on possession of a controlled substance "because [he] was closest to" the drugs. Doc. 5 at 3; Doc. 10 at 2.

In Case No. 1:16-cv-245-ECM, Plaintiff names only Bryan as a defendant. Doc. 1 at 1–2.  Plaintiff alleges Bryan gave Dotson permission to arrest Plaintiff, kept Plaintiff imprisoned after Dotson arrested Plaintiff, swore falsely in front of the County Circuit

---

[2] Plaintiff originally alleged that Bryan was "on call to room 123 Quality Inn Hotel." Doc. 10 at 3.  Plaintiff later stated that he "concurs Lt. Bryan was not on call." Doc. 51 at 1.  It is unclear precisely what Plaintiff means by "abuse in progress."

[3] The Sixteenth Amendment concerns the power of Congress to collect income taxes. U.S. Const. amend. XVI.  Plaintiff does not explain how his suit might state a cause of action under the Sixteenth Amendment, and this claim merits no further discussion.

Clerk that he had enough evidence to file a complaint against Plaintiff, and denied Plaintiff his equal protection rights by not taking time to investigate Dotson's reason to arrest Plaintiff, a biracial person, even though everyone in the motel room was culpable. Doc. 1 at 3. The court construes Plaintiff's claims against Bryan in Case No. 1:16-cv-245-ECM to be for false arrest and malicious prosecution.

## D.    Summary of Material Facts

For purposes of considering Defendant's motion for summary judgment, the court views the facts in the light most favorable to Plaintiff, the nonmoving party. Disputes of fact will be noted.

On Sunday, November 29, 2015 at 12:56 a.m., Dotson, a corporal with the Ozark Police Department, was on patrol in uniform when he discovered a man in a white truck parked behind the Quality Inn motel at 858 South U.S. Highway 231 in Ozark, Dale County, Alabama. Doc. 43-1 at 2. Dotson knew the area to be a common location for drug activity and prostitution, and he was suspicious of the man's presence in the area at that hour. Dotson approached the man, identified himself as a police officer, and inquired why the man was there. The man said the he was waiting for a friend named Tammy Shaw who was in Room 123 in the motel. The man agreed to wait while Dotson went to the motel to confirm his story. Doc. 43-1 at 2–3.

Dotson walked to Room 123 of the motel, which was on the ground floor. Doc. 43-6 at 1–2. He knocked on the door and announced himself as a police officer. Doc. 43-1 at 3. Dotson states in a declaration that he knocked two more times and heard movement in the room, but no one answered immediately. A woman named Tammy Shaw and a man

named Will Dasinger opened the door, stepped outside, and shut the door behind them. The delay and movement in the room led Dotson to suspect that the occupants hid drugs after he knocked and announced his presence. Doc. 43-1 at 3.  Plaintiff notes that Dotson did not mention the additional knocks and shuffling during his testimony at Plaintiff's revocation hearing. Doc. 50 at 2.

While the door was open, Dotson could see another man on the bed in the room and movement elsewhere in the room. Doc. 43-1 at 3.  Shaw confirmed that she was acquainted with the man in the white truck, and she said she was there to meet another friend named Catherine Williams. Doc. 43-1 at 4.

Dotson asked if he could look around the room, but Dasinger refused. Doc. 51-2. Dasinger said that he was employed at the hotel. Doc. 51-2.  Plaintiff claims "that nobody rented the room; Bill Dasinger had the key to room 123.  He was employed there." Doc. 51-2.  Dotson then asked who rented the room, and Dasinger answered that is was rented by "Rob," who was lying on the bed. Doc. 43-1 at 4.  Either Dasinger or Shaw opened the door, and Dotson recognized Rob as Rob Gowan, who Dotson knew to be a methamphetamine user.[4]  Dotson called out to Gowan through the open door and appeared to wake him up.  Gowan said he rented the room, and he gave Dotson permission to enter and see who else was inside. Doc. 43-1 at 4.  Plaintiff had personal belongings in the motel room, including clothing and electronics, and he had been in the room for most of the day. Doc. 51-2.  However, as Dotson later learned, according to the motel manager Room 123

---

[4] Plaintiff disputes that Gowan was a methamphetamine user. Doc. 50 at 5.

was not rented that night, and any occupants of the room were trespassing. Doc. 43-5.

Dotson then entered the room.  He approached a bathroom located in the back left corner of the room. Doc. 43-1 at 5.  Through a crack in the door, Dotson saw Plaintiff sitting on the toilet with his pants down.  Dotson knocked on the bathroom door and announced himself as a police officer.  Plaintiff responded, "No habla inglés!"  Dotson said he would wait for Plaintiff to come out of the bathroom.  About one minute later, Plaintiff flushed the commode and stepped out, partially closing the door behind him.  Plaintiff began to speak in English and said he had been joking about not speaking English.  Plaintiff identified himself to Dotson, and Plaintiff admitted that he had an outstanding arrest warrant.  Dotson used his radio for a warrant check, and while Dotson waited Plaintiff walked to the front door and sat in a chair. Doc. 43-1 at 5.

Police Officer Anthony Hall then arrived at the hotel in uniform. Doc. 43-3 at 2. Hall knew Plaintiff from Hall's time as an officer in the county jail where Plaintiff had been an inmate.  Hall knew Plaintiff to be a methamphetamine addict who had been in jail on drug charges. Doc. 43-3 at 2–3.  A few weeks before November 29, 2015, Hall also made a traffic stop on Plaintiff and another man. Doc. 43-3 at 3.  Hall discovered a baggie with drug residue in the car.  Hall did not arrest Plaintiff but warned him to get cleaned up. Doc. 43-3 at 3.

Dotson asked Plaintiff if he had any illegal substances on him.  Plaintiff denied that he did and began to remove items from his pants pockets. Doc. 43-1 at 5.  Dotson saw Plaintiff remove a clear plastic straw from his pocket. Doc. 43-1 at 5–6.  Dotson took the straw and placed it on the desk.  The end of the straw was cut at an angle and had white

residue on it. Doc. 43-1 at 6.   Dotson knew from his training and experience that methamphetamine users often cut straws at an angle to make it easier to snort methamphetamine off of a flat surface.

Dotson walked to the bathroom and discovered a man, Darrel Senn, lying in the bathtub and acting like he was asleep.   Dotson saw a plastic baggie near a trash can beside the toilet.   It contained a white powdery substance that, based on his experience, looked like methamphetamine.   When Plaintiff was on the toilet, he was closer to the baggie than anyone else in the room, and he was within arm's reach of it. Doc. 43-1 at 6; Doc. 43-7. Dotson placed the baggie on the counter outside of the bathroom.

Police Officer Nicholas Baity next arrived at about 1:15 a.m. Doc. 43-4 at 2; Doc. 44.   At 1:21 a.m., the dispatcher confirmed to Dotson that the Sheriff's Office held a warrant for Plaintiff's arrest. Doc. 43-1 at 7; Doc. 43-21 at 7–8; Doc. 43-22 at 12; Doc. 10 at 1.   At 1:24 a.m., Dotson noticed that his car camera was not activated.   He activated it and recorded the remainder of the events at the motel, including a conversation with Plaintiff. Doc. 43-1 at 7; Doc. 44.

Hall then advised the occupants of the room of their rights under *Miranda v. Arizona*, 384 U.S. 436 (1966).   When asked if he understood his rights, Plaintiff answered that he did. Doc. 44 at 1:27:00–1:27:17.

Deputy Adam Bruhn arrived at 1:28 a.m. Doc. 43-1 at 8.   Dotson, Hall, and Bruhn interviewed each person in the room separately.   They all denied ownership of the drugs that had been found. Doc. 43-1 at 8.   Plaintiff spoke openly about his prior conviction for manufacturing methamphetamine.   He admitted that he was an addict, that he needed help,

11

and that he was a three-time felon. Docs. 43-1, 43-4, 43-5, 44 at 2:27:50–2:28:10.  Plaintiff said he "came over here to check on a female and a child." Doc. 44 at 1:57:52–1:57:56.

Dotson believed he had probable cause to arrest Plaintiff on the outstanding warrant.[5] Doc. 43-1 at 8.  Dotson also believed he had probable cause to arrest Plaintiff for unlawful possession of a controlled substance for several reasons.  Plaintiff was the closest person to the baggie of methamphetamine, and it was within arm's reach of where Dotson first encountered Plaintiff.  In his pocket, Plaintiff had what Dotson determined, based on his experience and training, to be drug paraphernalia in the form of a straw cut at an angle to facilitate the snorting of methamphetamine, and with methamphetamine residue on it.  According to Dotson, Plaintiff hid in the bathroom, lied about his ability to speak English, and pulled the door behind him as he left the bathroom, as if to conceal something.  Plaintiff also discussed his other drug convictions, described himself as an addict, and said he needed help. Doc. 43-1 at 8–9.

Dotson further believed that he had probable cause to arrest Plaintiff for possession of drug paraphernalia, but he did not arrest Plaintiff for that offense. Doc. 43-1 at 9.  At the scene, Plaintiff expressed his gratitude to Dotson when Dotson told him that he would not be charged "with the straw." Doc. 10 at 2; Doc. 51-1.  Plaintiff was not the only person arrested from the hotel.  Dasinger was arrested on an outstanding warrant. Doc. 43-1 at 8.  Dotson secured the baggie and straw as evidence, and he contacted the on-call drug investigator.  Dotson swears that Plaintiff's race was not a factor in Dotson's decision to

---

[5] Dotson later learned there were actually two warrants for Plaintiff's arrest. Doc. 43-1 at 10.

arrest him or in any other action Dotson took. Doc. 43-1 at 9–10.

Because Dotson was arresting Plaintiff on a new charge, Dotson, rather than Deputy Bruhn, transported Plaintiff to the jail. Doc. 43-1 at 10.  Dotson states that normally when someone is arrested on an outstanding warrant, police officers will hand the arrestee over to the agency holding the warrant.  The officer or deputy from the agency holding the warrant then assumes responsibility for executing the warrant and completing the arrest report through their own agency.  Because the City of Ozark uses the Dale County Jail to house its inmates, Plaintiff would have been taken to the jail regardless of whether Dotson arrested Plaintiff on the outstanding warrant or the new drug offense.  Dotson states that regardless of the new drug offense, Plaintiff would have been arrested on November 29, 2015 on the outstanding warrant. Doc. 43-1 at 10–11.  Plaintiff would have been transported to the jail and would have remained there until his probation revocation hearing on January 12, 2016. Doc. 43-1 at 10–11.

Bryan, a lieutenant with the Ozark Police Department, was the commander of the Criminal Investigations Division. Doc. 43-2 at 2.  He did not participate in the arrest and learned about it the following week.  Bryan reviewed Dotson's report and converted it into a deposition in support of a criminal complaint. Doc. 43-2 at 2.  Bryan knew Dotson for years and believed him to be trustworthy and reliable. Doc. 43-2 at 3.  Bryan had no reason to question the accuracy of Dotson's report.  Bryan knew of Plaintiff's prior conviction for manufacturing methamphetamine.   Bryan disclosed Dotson as the source of the information in the deposition, and Bryan swore to the deposition before a magistrate on December 2, 2015.  Bryan signed and swore before a magistrate to a complaint charging

Plaintiff with unlawful possession of a controlled substance. The magistrate found probable cause for Plaintiff's arrest and issued a warrant to arrest Plaintiff for unlawful possession of a controlled substance. Bryan prepared the paperwork to submit the evidence from the motel to the lab. Doc. 43-2 at 3. Bryan returned to the motel over three months later and took photographs of Room 123 that are part of the summary judgment record. Doc. 43-2 at 4. Bryan avers Plaintiff's race was not a factor in any action he took. Doc. 43-2 at 4.

Plaintiff had outstanding warrants for probation violations when Dotson arrested him on November 29, 2015. Doc. 43-22 at 7–8. As a result of the drug charge, Plaintiff's probation was revoked on January 12, 2016. Doc. 43-21 at 13; Doc. 43-22 at 27.

On November 16, 2016, Plaintiff pleaded guilty to the charge of unlawful possession of a controlled substance in Dale County Circuit Court Case CC-2016-50. Doc. 86-2. During the plea proceeding, the court had the following exchange with Plaintiff:

> Q. Is your name Daniel Jesus Martin?
> A. Yes, sir.
> Q. And in Case CC-2016-50 the Grand Jury of Dale County returned the following indictment: "On or about November 29th, 2015 one Dale Jesus Martin did unlawfully possess a controlled substance, to-wit: methamphetamine, while at or near 858 South U.S. Highway 231, Ozark, Dale County Alabama in violation of Section 13A-12-212-A-1 of the Code of Alabama, against the peace and dignity of the State Of Alabama." That charges you with possession of a controlled substance. Do you understand what you're charged with?
> A. Yes, sir.
> Q. And did you do that?
> A. Yes, sir.

Doc. 86-2 at 2–3. Plaintiff and his lawyer agreed that Plaintiff understood the crime, the potential punishment, and the rights Plaintiff was giving up by pleading guilty; that his

lawyer believed there was a factual basis for the plea; and that Plaintiff was satisfied with the representation he received. Doc. 86-2 at 2–6. The following exchange then occurred:

> Q.  Are you making this guilty plea voluntarily and under your own free will?
> A.  Yes, sir.
> Q.  Other than the negotiated plea agreement which I have right here, has anybody threatened you or coerced you or promised you any reward or done anything to get you to plead guilty in this case?
> A.  No, sir.
> Q.  Are you pleading guilty because you are guilty?
> A.  Yes, sir.
> Q.  To the charge of possession of controlled substance how do you plead, guilty or not guilty?
> A.  Guilty.

Doc. 86-2 at 5–6.  The state court accepted Plaintiff's guilty plea and sentenced him to 36 months in prison along with other fines and costs. Doc. 86-2 at 6.  Plaintiff does not assert that his conviction for possession of a controlled substance has been invalidated.

**E.  *Heck v. Humphrey* and Estoppel**

In their supplemental special report, the defendants argue that Plaintiff's claims challenging the search of the motel room, the arrest on a controlled substance charge related to the search, and the prosecution on the charge are barred from review by the rule set out in *Heck v. Humphrey*, 512 U.S. 477 (1994). Doc. 86 at 2–3.  Defendants further argue Plaintiff is judicially estopped from challenging his arrest and prosecution, and that he is collaterally estopped from relitigating the question of probable cause for his arrest and prosecution. Doc. 86 at 3.

"To establish a § 1983 malicious-prosecution claim, the plaintiff must prove two things: (1) the elements of the common law tort of malicious prosecution; and (2) a

violation of his Fourth Amendment right to be free from unreasonable seizures." *Grider v. City of Auburn, Ala.*, 618 F.3d 1240, 1256 (11th Cir. 2010). In Alabama, the elements for malicious prosecution are "(1) a criminal prosecution instituted or continued by the present defendant; (2) with malice and without probable cause; (3) that terminated in the plaintiff accused's favor; and (4) caused damage to the plaintiff accused." *Id.* (quoting *Wood v. Kesler*, 323 F.3d 872, 882 (11th Cir. 2003)). In *Wood*, a plaintiff brought suit for malicious prosecution after being found guilty of speeding but not guilty of reckless driving. *Wood*, 323 F.3d at 876. The plaintiff claimed the arresting officer "maliciously issued a reckless driving citation without probable cause and caused him to be unreasonably "seized" by making a custodial arrest on that charge when he refused to sign the citation." *Id.* at 882. The Court of Appeals held the officer had "actual probable cause" to charge the plaintiff with reckless driving. *Id.* at 879. It relied, in particular, on the plaintiff's Alabama conviction for speeding, which "collaterally estop[ped] him from relitigating the fact of his speeding in th[e] § 1983 case." *Id.* Here, Plaintiff's admission as part of his guilty plea that he possessed a controlled substance estops him from litigating that fact in this § 1983 lawsuit. *See id.*; *see also Holley v. Town of Camp Hill*, 2018 WL 5410969, at *6 (M.D. Ala. Oct. 29, 2018) (relying on *Wood* and determining that Alabama's collateral estoppel doctrine "prevent[ed] plaintiff] from challenging whether [an officer] had probable cause for a traffic stop" where the plaintiff pleaded guilty to the infraction). Consequently, Plaintiff cannot show there was not probable cause to arrest him for the possession of a controlled substance. Because Plaintiff fails to demonstrate a lack of probable cause, he also cannot demonstrate all of the elements of his malicious prosecution claim. Defendants

therefore are due to be granted summary judgment on Plaintiff's claims of improper arrest and prosecution.

In *Heck*, the Supreme Court held that claims challenging the legality of a prisoner's confinement are not cognizable in a 42 U.S.C. § 1983 action "unless and until the conviction or sentence is reversed, expunged, invalidated, or impugned by the grant of a writ of habeas corpus," and complaints containing such claims must therefore be dismissed. *Heck*, 512 U.S. at 489. The relevant inquiry is "whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence." *Id.* at 487; *Wilkinson v. Dotson*, 544 U.S. 74, 81 (2005) ("*Heck* specifies that a prisoner cannot use § 1983 to obtain damages where success would necessarily imply the unlawfulness of a (not previously invalidated) conviction or sentence."). For example, if a plaintiff is convicted of resisting arrest, which is defined as preventing an officer from effecting a lawful arrest, then *Heck* would bar the plaintiff's suit against the officer seeking damages for an unreasonable seizure because success on the plaintiff's claim would negate an element of the offense. *E.g.*, *Hughes v. Lott*, 350 F.3d 1157, 1160 & 1160 n.2 (11th Cir. 2003) (citing *Heck*, 512 U.S. at 487 n.6). If, on the other hand, under doctrines such as inevitable discovery or harmless error, an illegal arrest may be followed by a valid conviction, a successful § 1983 suit for the alleged Fourth Amendment seizure violation would not necessarily imply the invalidity of the conviction and, as a result, *Heck* would not bar the suit. *Id.* at 1160 (quoting *Heck*, 512 U.S. at 487 n.7). To determine whether success on a claim would necessarily imply the invalidity of a judgment, "the court must look both to

the claims raised under § 1983 and to the specific offenses for which the § 1983 claimant was convicted." *Id*. at 1160 n.2.

Relying on footnote seven of *Heck*, defendants argue that no other doctrine, such as inevitable discovery or harmless error, would support admission of the evidence if the search were found to violate the Fourth Amendment. Doc. 86 at 6–8.  If the evidence were suppressed, they argue, no evidence would remain to support Plaintiff's conviction, and consequently success on Plaintiff's claim would necessarily imply the invalidity of his conviction for possession of a controlled substance. *Id.*; *see Ballenger v. Owens*, 352 F.3d 842, 846–47 (4th Cir. 2003); *see also Dean v. Chadwick*, 2018 WL 4926330, at *5 (M.D. Ala. Sept. 21, 2018) (concluding that *Heck* barred suit where plaintiff claimed "the drugs underlying his convictions were planted and he was framed"), *adopted*, 2018 WL 4924544 (M.D. Ala. Oct. 10, 2018).   In *Ballenger*, the plaintiff claimed that an officer who discovered illegal drugs in his vehicle conducted an illegal search after a traffic stop. *Ballenger*, 352 F.3d at 843–45.  The Court of Appeals determined that the drugs were "uniquely available from the alleged illegal search, and if it were suppressed as evidence, there would be no evidence to convict [plaintiff] for drug trafficking." *Id.* at 846. Consequently, it held, a judgment in the plaintiff's favor on the § 1983 suit would necessarily imply the invalidity of his conviction, and therefore the § 1983 suit was barred by *Heck. Id.* at 846–47.

Consistent with this precedent, the court concludes that a judgment in favor of Plaintiff on his claims challenging the constitutionality of the search, his arrest based on the controlled substances found during this search, and his convictions for the substances

in his possession at the time of search would necessarily imply the invalidity of his conviction for possession of a controlled substance.  Since the illegal search, false arrest, and malicious prosecution claims go to the fundamental legality of Plaintiff's conviction and the resulting sentence on which he is now incarcerated, he is entitled to no relief on these claims in the instant cause of action. *Heck*, 512 U.S. 477 at 487–89; *see also Edwards v. Balisok*, 520 U.S. 641, 648 (1997) (extending *Heck* to prisoner's claims for declaratory relief, injunctive relief, and damages resulting from alleged unlawful loss of prison good time); *Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973).

The law is settled that "habeas corpus is the exclusive [federal] remedy for a state prisoner who challenges the fact or duration of his confinement and seeks immediate or speedier release, even though such a claim may come within the literal terms of § 1983." *Heck*, 512 U.S. at 481; *Balisok*, 520 U.S. at 645 (holding that the "sole remedy in federal court" for a prisoner challenging the constitutionality of incarceration on a state-court sentence is a 28 U.S.C. § 2254 petition for writ of habeas corpus).  The United States Supreme Court has emphasized "that a claim either is cognizable under § 1983 and should immediately go forward, or is not cognizable and should be dismissed." *Balisok*, 520 U.S. at 649.  Where, as here, a plaintiff argues that the drugs underlying his conviction were discovered only as the result of an illegal search, he is collaterally attacking his conviction, and *Heck* and its progeny hold that he must seek relief through a writ of habeas corpus, not § 1983.

*Heck* did "not engraft an exhaustion requirement upon § 1983, but rather den[ied] the existence of a cause of action.  Even a prisoner who has fully exhausted [all] available

state remedies has no cause of action under § 1983 unless and until the conviction or sentence is reversed, expunged, invalidated, or impugned by the grant of a writ of habeas corpus." *Heck*, 512 U.S. at 489–90. "This 'favorable termination' requirement is necessary to prevent inmates from doing indirectly through damages actions what they could not do directly by seeking injunctive relief—challenge the fact or duration of their confinement without complying with the procedural limitations of the federal habeas statute." *Nelson v. Campbell*, 541 U.S. 637, 646–47 (2004).

It is clear from the foregoing that Plaintiff's claims challenging the November 29, 2015 search of the motel room, his arrest arising from evidence seized during the search, and his prosecution for a controlled substance offense related to this evidence are barred under *Heck* and its progeny. Consequently, the illegal search, false arrest, and malicious prosecution claims are not now cognizable in this cause of action. Summary judgment is therefore due to be granted in favor of the defendants on these claims.

## IV. CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that:

1.      Defendants' motion for summary judgment (Doc. 86) be GRANTED.

2.      Judgment be GRANTED in favor of Defendants.

3.      This case be DISMISSED without prejudice as Plaintiff's claims are not properly before the court in the instant cause of action.

4.      The costs of this proceeding be taxed against Plaintiff.

It is further ORDERED that on or before **February 12, 2019,** the parties may file objections to the Recommendation. Any objections filed must specifically identify the

findings in the Magistrate Judge's Recommendation to which the party is objecting. Frivolous, conclusive or general objections will not be considered by the District Court. The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file a written objection to the proposed findings and recommendations in the Magistrate Judge's report shall bar a party from a *de novo* determination by the District Court of factual findings and legal issues covered in the report and shall "waive the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions" except upon grounds of plain error if necessary in the interests of justice. 11th Cir. R. 3-1; *see Resolution Trust Co. v. Hallmark Builders, Inc.*, 996 F.2d 1144, 1149 (11th Cir. 1993); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989).

DONE on the 29th day of January, 2019.

GRAY M. BORDEN
UNITED STATES MAGISTRATE JUDGE